**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | |
|---|---|
| Donna Kiessel, individually and on behalf of all similarly situated individuals,<br><br>     Plaintiff,<br><br> v.<br><br>The Corvus Group, Inc. and RSM McGladrey, Inc.,<br><br>     Defendants. | CASE NO.: 1:12-cv-00390-PAG<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE** |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  PROCEDURAL AND FACTUAL HISTORY ....................................................1

    A.  Procedural History ........................................................................................1

    B.  Statement of Facts .........................................................................................3

        1.  The Parties ..........................................................................................3

            a. Defendants and Their Work with the FDIC .................................3

            b. Named Plaintiffs and Opt-in Plaintiffs .......................................4

        2.  Plaintiff and the Putative Class Are All Subject to the Same Compensation Method ...............................................................................................5

        3.  Defendants' Pre-Suit Conduct and Communication with the Putative Class ....6

III.  ARGUMENT ......................................................................................................7

    A.  The Standard for Conditional Certification at the Notice Stage is Lenient .............7

    B.  The Court Should Grant Plaintiff's Motion for Conditional Certification because She Has Met Her Lenient Burden of Showing that She and the Putative Class Are "Similarly Situated" ......................................................................................10

    C.  The Court Should Authorize Judicial Notice to the Putative Collective Class......13

        1.  The Statute of Limitations Continues to Run on the Putative Collective Class Members' Claims ..............................................................................13

        2.  Court-Approved Notice Promotes Judicial Economy......................................14

        3.  Court-Approved Notice is Necessary to Correct Defendants' Misleading Communication and Other Attempts to Chill Participation in this Case .........14

    D.  Plaintiffs' Proposed Judicial Notice is Accurate and Informative.........................16

    E.  The Court Should Compel Defendants to Produce Information Necessary for Plaintiff to Disseminate Notice to the Putative Collective Class Members...........17

IV.  CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Belt v. Emcare, Inc., 299 F. Supp. 2d 664 (E.D. Tex. 2003) ...................................................16

Bongat v. Fairview Nursing Care Ctr., 340 F. Supp. 2d 181 (E.D.N.Y. 2004)).........................3

Comer v. Wal-Mart Stores, Inc., 454 F.3d 544 (6th Cir. 2006).................................................8

Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819 (N.D. Ohio 2011). .................................8-9

Douglas v. GE Energy Reuter Stokes, 2007 WL 1341779 (N.D. Ohio Apr. 30, 2007) ..........11, 18

Fisher v. Mich. Bell Tel. Co., 2009 WL 3427048 (E.D. Mich. Oct. 22, 2009) ............................13

Garcia v. Freedom Mortg. Corp., 2009 WL 3754070 (D.N.J. Nov. 2, 2009)...............................17

Gee v. Suntrust Mortg., Inc., 2011 WL 722111 (N.D. Cal. Feb. 18, 2011) ..................................17

Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835 (N.D. Cal. 2010)..........................................17

Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989)...................................8, 12-14, 16, 18

Jackson v. Papa John's USA, Inc., 2009 WL 385580 (N.D. Ohio Feb. 13, 2009).......................11

Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985) ......................................16

Lacy v. Reddy Elec. Co., 2011 WL 6149842 (S.D. Ohio Dec. 9, 2011)......................................10

Levy v. Verizon Info. Servs., Inc., 2007 WL 1747104 (E.D.N.Y June 11, 2007) ........................11

Lewis v. The Huntington Nat'l Bank, 2011 WL 1990567 (S.D. Ohio May 23, 2011) .............9, 13

McNelley v. ALDI, Inc., 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009) ................ 7, 9, 11-12, 18

Murton v. Measurecomp, LLC, 2008 WL 5725631 (N.D. Ohio June 9, 2008) ............................11

Musarra v. Digital Dish, Inc., 2008 WL 818692 (S.D. Ohio Mar. 24, 2008).........................13, 17

O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567 (6th Cir. 2009) ...........................................8-9

Pereira v. Foot Locker, Inc., 261 F.R.D. 60 (E.D. Pa. 2009)......................................................17

Scholtisek v. Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005) .....................................................11

Seger v. BRG Realty, LLC, 2011 WL 2020722 (S.D. Ohio May 24, 2011)...............................8-9

Stephenson v. Info. Providers, Inc., 2010 WL 2132804 (D. Minn. May 7, 2010) ........................11

Swarthout v. Ryla Teleservices, Inc., 2011 WL 6152347 (N.D. Ind. Dec. 12, 2011)...................17

Torres v. Gristede's Operating Corp., 2006 WL 2819730 (S.D.NY. Sept. 29, 2006)...................10

**STATUTES**

29 U.S.C. § 216(b) ...................................................................................... 1, 8, 13-14

29 U.S.C. § 255(a) ...........................................................................................14

**REGULATIONS**

C.F.R. § 541.100...............................................................................................2

C.F.R. § 541.200...............................................................................................2

C.F.R. §541.300................................................................................................2

C.F.R. §541.601................................................................................................2

## I.    <u>INTRODUCTION</u>

Plaintiff brings this Motion for Conditional Certification and Judicial Notice pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff filed this lawsuit on behalf of herself and all other similarly situated Asset Managers employed by the Corvus Group, Inc. and RSM McGladrey, Inc. (collectively, "Defendants") who worked on projects to assist the Federal Deposit Insurance Corporation ("FDIC") with bank closings and were paid on an hourly basis. To date, thirty-four (34) similarly situated individuals have also joined this lawsuit.

Plaintiff and the thirty-four (34) Opt-in Plaintiffs were all classified by Defendants as "exempt" from overtime, were paid under the same compensation system, and allege the same injury—that Defendants paid them on an hourly basis and failed to pay them time-and-a-half for their overtime hours. Under the Sixth Circuit's lenient standard for conditional certification, these Asset Managers are "similarly situated" and judicial notice is appropriate. Accordingly, Plaintiff respectfully requests that the Court grant this motion and: (1) conditionally certify this case as a collective action; (2) order that judicial notice be sent to all putative collective class members; (3) approve the form, content and distribution plan for Plaintiff's proposed judicial notice (Ex. A); and (4) order Defendants to produce to Plaintiff's Counsel the contact information for each putative collective class member.

## II.    <u>PROCEDURAL AND FACTUAL SUMMARY</u>

### A.    <u>Procedural History</u>

Plaintiff Donna Kiessel ("Plaintiff") filed this lawsuit, on behalf of herself and all similarly situated individuals, against Defendants the Corvus Group, Inc. ("Corvus") and RSM McGladrey, Inc. ("McGladrey") on February 17, 2012.[1] (ECF No. 1.) In her Complaint, Plaintiff

---

[1] RSM McGladrey is now known as McGladrey, LLP.

alleged she was employed by Defendants as an Asset Manager, and that her job for Defendants was to assist the FDIC with receivership, asset management and other services related to bank failures. (Id.) Plaintiff further alleged that she and Asset Managers were misclassified by Defendants because they were paid on an hourly basis, not on a salary basis, that they only received "straight time" when they worked overtime hours, and that they were not compensated for all their work hours, including time spent traveling to and from their home communities. (Id.) Plaintiff alleged that Defendants actions violated the FLSA and that she and all others similarly situated are entitled to their unpaid overtime premiums, liquidated damages, attorneys' fees, and costs, among other damages. (Id.)

Corvus and McGladrey filed their Answers on April 16, 2012. (ECF Nos. 32-33.) Corvus, recognizing that its hourly compensation method rendered it unable to satisfy the "salary basis test" necessary for most exemption defenses, did not plead an affirmative exemption defense. (See ECF No. 32, ¶¶ 46-53.) McGladrey, however, pleaded several "white collar" affirmative exemption defenses (ECF No. 33, ¶ 50.); all of which fail as a matter of law.[2]

On April 11, 2012, the parties held their Rule 26(f) conference, and submitted their Joint 26(f) Report on April 18, 2012. (Declaration of Andrew G. Chase ("Chase Decl."), ¶ 5; ECF No. 35.) On April 23, 2012, the Court held a Case Management Conference with the parties. (ECF No. 39.) In the Joint 26(f) Report and at the Case Management Conference, Plaintiff asserted that she be allowed to move for conditional certification without delay to allow for discovery. (ECF No. 35; Chase Decl. ¶ 6.) Defendants, however, insisted that discovery was necessary prior to briefing on conditional certification to evaluate whether Plaintiff and the putative class are

---

[2] An employee paid on an hourly basis does not satisfy the "salary basis test," and thus does not qualify for any of the so-called "white collar exemptions" to the FLSA's overtime requirements. See 29 C.F.R. §§ 541.100, .200, .300, .601; Bongat v. Fairview Nursing Care Ctr., 340 F. Supp. 2d 181, 184 (E.D.N.Y. 2004).

similarly situated.[3] (ECF No. 35; Chase Decl. ¶ 7.) The Court set a short period for pre-conditional certification, and on April 27, 2012, the Court entered a Case Management Order setting the discovery and the briefing schedules for this motion. (ECF No. 39.)

**B.**     **Statement of Facts**

  **1.**     **The Parties**

    a.     Defendants and their work with the FDIC

Corvus is a domestic corporation with its principal place of business in Largo, Maryland. (ECF Nos. 1, 32.) It is in the business of providing capital markets, receivership and advisory services to public and private sector organizations. (ECF Nos. 1, 32.) McGladrey is a domestic partnership headquartered in Bloomington, Minnesota, and is one the country's largest providers of assurance, tax and consulting services. (ECF Nos. 1, 33.)

The FDIC provides deposit insurance to banks nationwide, and also examines and supervises those banks for safety and soundness. (Chase Decl. ¶ 10.) When a bank is critically undercapitalized or is unable to meet its obligations to depositors (called a "bank failure"), the FDIC closes the bank and is appointed as the bank's "receiver." (Id.) As the failed bank's receiver, the FDIC assumes the task of selling and collecting the bank's assets and settling its debts. During this period, the bank is "in receivership." (Id.)

In the wake of the 2008 financial crisis, the number of banks entering into receivership increased dramatically, and the FDIC began contracting with private firms, including Corvus and McGladrey, to assist with its receivership responsibilities. (Id.) The FDIC contracted McGladrey to provide receivership, asset management and other services related to bank failures, and

---

[3] Despite Defendants' "need" for discovery prior to responding to Plaintiff's motion, Defendants refused to produce deponents as requested by Plaintiff. Instead, Defendants stipulated that no party would take any depositions prior a court ruling on this motion. (Chase Decl. ¶ 9.)

McGladrey in turn retained Corvus as a subcontractor to work on its FDIC contracts (hereafter, "FDIC Projects"). (ECF Nos. 32-33.) Together, Defendants employed Asset Managers to perform these FDIC Projects at failed banks across the country. (ECF Nos. 1, 32-33.)

> b.  Named Plaintiff and Opt-in Plaintiffs

Plaintiff was employed by Defendants to work on an FDIC Project at AmTrustBank in Cleveland, Ohio. (ECF No. 1; Ex. I.) She worked there as an Asset Manager from December 2009 to May 2010.[4] (Id.) Throughout Plaintiff's employment, she was paid on an hourly basis, and was paid straight time for all hours worked in excess of forty per week. (Id.) Thirty-four (34) additional Asset Managers have joined this case as Opt-in Plaintiffs by filing their written consent with the Court. (Chase Decl. ¶ 4.) Combined, they work or worked for Defendants on FDIC Projects in Arizona, California, Colorado, Florida, Georgia, Indiana, Louisiana, Maryland, Minnesota, Missouri, Ohio, Oregon, Texas, Utah, Washington and Wisconsin. (Chase Decl. ¶ 8; Exs. B-X.) Like Plaintiff, these thirty-four Opt-in Plaintiffs also worked for Defendants as an Asset Managers; assisted the FDIC with receivership, asset management and other services related to bank failures; were paid on an hourly basis; worked more than forty hours per week; and received only straight time for all hours worked in excess of forty per week. (ECF No. 1; Exs. B-X).

> **2.  Plaintiff and the Putative Class Are All Subject to the Same Compensation Method.**

Upon hire, Asset Managers receive an offer letter from Defendants, which states that they will be paid per hour and lists their hourly rate. (Exs. B-X.) Defendants classified Asset Managers as "exempt" from the FLSA's overtime requirements. (ECF No. 1; Exs. B-X.)

---

[4] For simplicity, this memorandum will refer to all of the employees at issue here as "Asset Managers," although their actual job titles may slightly differ.

Defendants require Asset Managers to record their work hours on timesheets, which they are to submit to Defendants. (<u>Id.</u>) Asset Managers are paid an hourly rate for all their work hours—they do not receive a salary or a guaranteed weekly minimum payment. (<u>Id.</u>) Rather, they are paid only for the number of hours they work each week, and their pay fluctuates depending on the number of hours they worked. (<u>Id.</u>)

Asset Managers regularly work over forty hours in a workweek. (<u>Id.</u>) During any week in which they work overtime, they are paid their hourly rate for all hours worked, including each hour worked in excess of forty. (<u>Id.</u>) That is, they are paid "straight time" for their overtime hours, rather than one and one-half times their hourly rate as required by the FLSA. (<u>Id.</u>)

Because Defendants' FDIC Projects are located across the country, Asset Managers often travel to worksites far away from their homes. (ECF No. 1; Exs. B-X.) Although this travel often cut across regular work hours, Asset Managers are not compensated for the time they spend traveling to and from their out-of-state worksites. (<u>Id.</u>) Asset Managers' travel and many other aspects of their employment, were all subject to policies and guidelines promulgated and enforced by Defendants. (Exs. B-X.)

### 3.    Defendants' Pre-Suit Conduct and Communication with the Putative Class.

Prior to filing this lawsuit, Plaintiff's Counsel conducted a pre-suit investigation into Defendants' pay practices by mailing investigatory letters to several of Defendants' former employees. (Chase Decl. ¶ 11.) When Plaintiff's Counsel refused Corvus' demand to cease the investigation, Corvus' Counsel filed a complaint with the Minnesota Office of Lawyers Professional Responsibility ("MOLPR"), alleging that Plaintiff's Counsel's had violated ethical rules regarding client solicitation. (<u>Id.</u> at ¶¶ 11-12.) After reviewing Corvus' Counsel's

complaint, the MOLPR determined it did "not state a basis for a reasonable belief that misconduct may have occurred," and refused to investigate. (Id. at ¶ 13.)

Unsatisfied with the MOLPR's initial determination, Corvus' Counsel appealed, and the complaint was referred to an MOLPR Board member for review. (Id. at ¶ 14.) On December 2, 2011, the Board member found for a second time that the Complaint offered "no reasonable belief that professional misconduct may have occurred," and closed the Board's file on the matter. (Id. at ¶ 15.)

Undeterred by the MOLPR's decision, Corvus sued Plaintiff's Counsel on February 2, 2012, in the Circuit Court of Cook County, Illinois. (Chase Decl. ¶ 16.) Corvus' complaint alleged that Plaintiff's Counsel's written solicitations constituted trade libel, consumer fraud and deceptive trade practices. (Chase Decl. ¶ 16.) Plaintiff's Counsel removed the case to the United States District Court for the Northern District of Illinois, and moved to dismiss the claims. (Id. at ¶ 17.) On May 24, 2012, the Honorable Elaine Bucklo granted the motion and dismissed all claims, calling Corvus' consumer fraud claim "frivolous," and ordered Corvus to pay attorney's fees and costs associated with defending that claim.[5] (Id. at ¶ 18.)

Corvus' attempts to sideline this lawsuit have not been limited to its attempts to intimidate Plaintiff's Counsel. Indeed, it has also attempted to chill the participation of the putative collective class members. Shortly after Corvus filed the ethics charges against Plaintiff's Counsel, its CEO and President sent an email regarding Plaintiff's Counsel's then-investigation to Corvus' entire current and former Asset Manager workforce. (Ex. Y.) The email claimed that Corvus was being "harassed by an opportunistic law firm" conducting a "so-called

---

[5] Currently pending before Judge Bucklo is Plaintiff Counsel's Rule 11 Motion, requesting that the Illinois Court sanction Corvus, not just for its consumer fraud count, but as to all claims brought by Corvus in its frivolous lawsuit. (Chase Decl. ¶ 19.)

'investigation' into [their] payroll practices." (Ex. Y.) The email said Plaintiff's Counsel's investigation an "affront to the integrity" of Corvus and Asset Managers. (Ex. Y.) It also mischaracterized the nature of Plaintiff's Counsel's investigation, calling it a "nuisance" and "demeaning" to Asset Managers. (Ex. Y.) The email went on to inform them about the complaint that Corvus' Counsel had filed against Plaintiff's Counsel, "calling into question certain ethical aspects of the solicitations." (Ex. Y.)

## III.    <u>ARGUMENT</u>

Plaintiff requests that the Court conditionally certify this matter and send court-authorized notice to the following group:

> All individuals employed by the Corvus Group, Inc., RSM McGladrey, Inc., McGladrey & Pullen, LLP or McGladrey, LLP, as asset managers, asset servicing professionals, or any other positions that assisted the FDIC with receivership, asset management and other services related to bank failures, and who were paid an hourly rate plus "straight time" for their overtime hours, at any time within three years of the date the Court grants this motion.

Conditional certification is warranted here as Plaintiff and all Asset Managers are "similarly situated" because Defendants' "hourly plus straight time" compensation method applied uniformly to all Asset Managers.

As this Court stated in <u>McNelley v. ALDI, Inc.</u>, the standard applied at this stage is a lenient one. 2009 WL 7630236, at *2 (N.D. Ohio Nov. 17, 2009). Granting conditional certification is even more compelling in this case where, unlike <u>McNelley</u>, the Plaintiff alleges a "common plan or policy" that violates the FLSA: Defendants' "hourly plus straight time" compensation policy. <u>See</u> <u>id.</u> at *4.

### A.    <u>The Standard for Conditional Certification at the Notice Stage is Lenient.</u>

The FLSA specifically contemplates employees pursuing their claims collectively, stating that an action for unpaid overtime wages may be maintained "by any one or more employees for

7

and in behalf of himself or themselves and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.; see also Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). When a class is conditionally certified, notice of the lawsuit is provided to the collective class members, giving them the opportunity to file their written consent and join the action. Seger v. BRG Realty, LLC, 2011 WL 2020722, at *2 (S.D. Ohio May 24, 2011).

As the Supreme Court has explained, the FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs, and decreasing the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). "These benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. Thus, district courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. at 170-71.

For a court to conditionally certify a collective action under the FLSA, the plaintiff must show that she is "similarly situated" with the putative collective class members. Comer, 454 F.3d at 546. The similarly situated standard is less stringent than the predominance requirement of Rule 23(b)(3). O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567, 584 (6th Cir. 2009). Courts in the Sixth Circuit divide the "similarly situated" inquiry into two stages. Comer, 454 F.3d at 546; Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011). The first stage, the "notice stage," takes place at the beginning of discovery. Comer, 454 F.3d at 546. At the notice

stage, the court must determine whether the plaintiffs are similarly situated using a "fairly lenient" standard, requiring only a "modest factual showing" that the plaintiff and putative class members are similarly situated. Id. at 547; McNelley, 2009 WL 7630236, at *2. The court's task is to ascertain whether the putative class members were "allegedly subject to a common practice which may have resulted in FLSA overtime violations." Creely, 789 F. Supp. 2d at 840. "The proper inquiry is simply whether plaintiffs are similarly situated *with respect to their allegations that the law has been violated*." Id. (quotation omitted) (emphasis in original). The Sixth Circuit has stated that plaintiffs are similarly situated when their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien, 575 F.3d at 585 (stating "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy"). Proof of such a "unified policy" of FLSA violations, however, is not necessary. Id. at 584. Importantly, "a plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" McNelley, 2009 WL 7630236, at *2 (quoting O'Brien, 575 F.3d at 546-47).

At the notice stage, courts do not consider the merits of the claims, resolve factual disputes, make credibility determinations, or decide substantive issues. See Lewis v. The Huntington Nat'l Bank, 2011 WL 1990567, at *2 (S.D. Ohio May 23, 2011); Seger, 2011 WL 2020722, at *3. Rather, these matters are considered after discovery at the second stage, when the defendant may move to decertify the collective. Seger, 2011 WL 2020722, at *2-3. At the decertification stage, the court decides whether the plaintiffs are sufficiently similarly situated in order to proceed to trial, or whether the case should be fully or partially decertified. See O'Brien, 575 F.3d at 586 (discussing the benefits of partial decertification).

In this case, because very little discovery has taken place, the Court should analyze Plaintiff's motion under the lenient "notice stage" standard. See Lacy v. Reddy Elec. Co., 2011 WL 6149842, at *3-4 (S.D. Ohio Dec. 9, 2011).

**B.** **The Court Should Grant Plaintiff's Motion for Conditional Certification because She Has Met Her Lenient First-stage Burden of Showing that She and the Putative Class Are "Similarly Situated."**

As illustrated by the facts set forth above, Plaintiff and the Asset Managers at issue here are "similarly situated," making this case appropriate for conditional certification. In addition to the allegations in the Complaint, Plaintiff's motion is supported by her declaration, declarations from twenty-three (23) Opt-in Plaintiffs, and Defendants' own documents and admissions. This evidence shows that Defendants' Asset Managers worked on the same types of FDIC projects, were required to adhere to the same employment policies and guidelines, were uniformly classified as exempt, regularly worked more than forty hours per week, and most importantly, were all paid on an hourly basis and received straight time for their overtime hours.

The central and most significant feature that ties Defendants' Asset Managers together is that they were all compensated under the same "hourly plus straight time" system. This similarity alone is enough to show that Asset Managers are adequately similarly situated to proceed as a collective action. Indeed, courts have routinely granted conditional certification in cases with facts similar to this one. See, e.g., Stephenson v. Info. Providers, Inc., 2010 WL 2132804, at *4 (D. Minn. May 7, 2010) (conditionally certifying class of employees paid on "fee basis" where all the putative class members were governed by the same policies, compensated in the same manner and classified as exempt); Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *10 (S.D.NY. Sept. 29, 2006) (granting conditional certification where plaintiffs showed that their employer treated them as hourly employees and they were subject to a

common practice or scheme that violated the law); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 390 (W.D.N.Y. 2005) (in granting conditional certification, stating, "[the fact that] these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiff's claims. What *is* important is that these employees were allegedly subject to a common practice or scheme on [defendant's] part of docking salaried employees' pay in violation of the FLSA.") (emphasis in original).

Plaintiff's motion is supported by the allegations in the Complaint, declarations from twenty-three (23) Asset Managers who worked in sixteen (16) different states, and Defendants' own documents and admissions. This evidence more than satisfies Plaintiff's lenient first-stage burden. Other courts, including this one, have granted conditional certification for larger classes based on fewer declarations. See, e.g., McNelley, 2009 WL 7630236, at *3-4 (conditionally certifying class of 1,300 people based on the complaint, declarations from the named plaintiff and seven opt-ins, and a job description); Jackson v. Papa John's USA, Inc., 2009 WL 385580, at *3 (N.D. Ohio Feb. 13, 2009); (granting conditional certification of 1,000-person class based on declarations of plaintiff and two opt-ins, a description of job duties, and training materials); Murton v. Measurecomp, LLC, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008); (conditionally certifying class of several hundred employees based on the plaintiff's declaration, the declaration of one opt-in plaintiff, and an employee's deposition transcript); Douglas v. GE Energy Reuter Stokes, 2007 WL 1341779, at *6 (N.D. Ohio Apr. 30, 2007) (finding that declarations from the plaintiff and a single opt-in plaintiff were "sufficient to warrant conditional treatment of the case as a collective action"); Levy v. Verizon Info. Servs., Inc., 2007 WL 1747104, at *4 (E.D.N.Y June 11, 2007) (concluding that the plaintiffs were not required to

submit evidence implicating every one of the defendant's offices to establish a common unlawful policy because the plaintiffs' declarations were sufficient to permit an inference that the policy governed all the offices).

This is not a misclassification case where courts must look at the plaintiffs' job duties. Nor is this an off-the-clock case where courts would have to examine the plaintiffs' unrecorded work hours. Rather, the heart of this case is Plaintiff's allegation that Defendants uniformly applied the same unlawful compensation model to all Asset Managers, and that pay policy caused the same injury for which the named and Opt-in Plaintiffs now seek relief. Therefore, any differences in job duties are irrelevant, and determining work hours (and thus damages) is simply a matter of examining Defendants' records.

Plaintiff, the Opt-in Plaintiffs and any Asset Manager who joins this case will advance the same claims and seek the same form of relief. The claims in this case are not purely personal to Plaintiff; they arise from a common set of facts and a universally-applicable compensation plan that affected each of Defendants' Asset Managers. See McNelley, 2009 WL 7630236, at *2. This case is ripe for conditional certification.

## C.      The Court Should Authorize Judicial Notice to the Putative Collective Class.

The Supreme Court has stated that the judicial system benefits from collective actions when "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170. The Court has further encouraged district courts to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation. Id. at 171-72. It went on to state that court-approved notice should be sent in "appropriate cases," but that it was in the district court's discretion to determine

whether a particular case was appropriate. Id. at 169-70. As shown above, all hourly-paid Asset Managers are "similarly situated" for purposes of the FLSA. This Court should exercise its discretion and authorize Plaintiff to send Court-approved notice, for three primary reasons.

**1.    The Statute of Limitations Continues to Run on the Putative Collective Class Members' Claims.**

The putative collective class members' claims in this case are shrinking by the day and there is a very real risk that they will completely lapse due to the statute of limitations. Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members when the complaint is filed, the statute of limitations in an FLSA collective action is not tolled when the action is filed or even once conditional certification is granted. 29 U.S.C. § 216(b); Lewis, 2011 WL 1990567, at *2; Musarra v. Digital Dish, Inc., 2008 WL 818692, at *2 (S.D. Ohio Mar. 24, 2008). Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. Fisher v. Mich. Bell Tel. Co., 2009 WL 3427048, at *8 (E.D. Mich. Oct. 22, 2009); see also 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case and that the statute of limitations is running on their claims. Fisher, 2009 WL 3427048, at *8 (citing Hoffmann-La Roche, 493 U.S. at 170).

Prompt court action and judicial notice is particularly important in this case because the putative class members' claims are at risk of expiring due to the statute of limitations.[6] In most cases brought under the FLSA, the claims of current employees do not diminish due the statute

---

[6] The statute of limitations for FLSA violations extends back a minimum of two years, but may extend back an additional year if the employer's violation was willful. 29 U.S.C. § 255(a).

of limitations because for every day the statute runs, the violation continues along with their employment. Thus, as long as they remain employed, their claims do not diminish. In this case, however, the bulk of Asset Managers' work—and thus, the bulk of their claims—took place during the height of the financial crisis, between 2008 and mid- to late-2010. As a result, the claims of each putative collective class member diminish by the day.

> 2.    **Court-approved Notice Promotes Judicial Economy.**

Collective actions under the FLSA promote judicial economy by lowering litigation costs for individual plaintiffs and decreasing the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact." Hoffmann-La Roche, 493 U.S. at 170. These benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.

Judicial notice also promotes judicial economy because it discourages class members from filing numerous identical suits and instead allows them to pursue their claims in one case where the same issues of law and fact are already being addressed. See id. Collective adjudication of this case will save the Court's time and resources, and the parties and will avoid disparate rulings that would undoubtedly arise if each class member filed individual suits.

> 3.    **Court-approved Notice is Necessary to Correct Defendants' Misleading Communication and Other Attempts to Chill Participation in this Case.**

Defendant Corvus' pre-suit conduct further illustrates the need for immediate Court intervention and communication to the collective class. For starters, Court intervention is necessary to correct the effects of the misleading email sent by Corvus' CEO and President regarding this lawsuit. Court intervention in the form of judicial notice is often necessary to prevent communications that may unfairly sway the potential plaintiffs from joining or not

joining the lawsuit. <u>Hoffman-La Roche</u>, 493 U.S. at 171. Situations in which the "class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 751 F.2d 1193, 1202 (11th Cir. 1985). Such communications "sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts.' <u>Id.</u> at 1203.

In a similar case, the plaintiffs' moved for a protective order, sanctions and corrective notice after defendants unilaterally mailed to absent class members a letter regarding the lawsuit. <u>Belt v. Emcare, Inc.</u>, 299 F. Supp. 2d 664, 666-67 (E.D. Tex. 2003). In granting the plaintiffs' motion, the court stated that the "[defendants'] letter misrepresented many of the issues in this action in such a way as to discourage absent class members from joining the suit. For example, the letter suggested that the current action was an attack on the potential plaintiffs' status as professionals." <u>Id.</u> at 666. The <u>Belt</u> court further found that the defendants' communication misleading, coercive and intended to undermine the purposes of the collective. <u>Id.</u> at 668-669. The court reasoned that the communication was misleading because it mischaracterized the suit as an attack on the absent class members' status as "professionals" in the workplace; it was coercive because employer-employee communications are more likely to be coercive; and it was intended to undermine the purposes of the collective action by discouraging absent class members from joining because such a communication "could have no purpose but to discourage absent class members from joining the suit." <u>Id.</u> at 668-669.

Here, Corvus' email was also misleading, coercive, and intended to undermine the purposes of the collection action process. Corvus attempted to discredit Plaintiff's Counsel's investigation by claiming that it was being "harassed by an opportunistic law firm," referring to it as a "so-called 'investigation,'" by asserting that it was demeaning and an "affront" on their

integrity, and by casting aspersions on Plaintiff's Counsel's ethics by mentioning Corvus' Counsel's frivolous complaint to the MOLPR.

This email and Corvus' unsuccessful efforts to deter Plaintiff's Counsel from pursuing this case illustrate the lengths Corvus has gone to and will go to sideline this lawsuit and discourage participation in it. All the more reason that court intervention is necessary to correct Corvus' improper past conduct, and deter and control it from further behavior that could intimidate past and current employees from pursuing their unlawfully withheld wages.

**D.**   **Plaintiff's Proposed Judicial Notice is Accurate and Informative.**

Judicial notice must be "timely, accurate, and informative." Hoffmann-La Roche, 493 U.S. at 172. Plaintiff's proposed Judicial Notice, attached as Exhibit A, accomplishes just that. It has been carefully drafted to advise the putative collective class members of the lawsuit, the nature of the dispute, and their right to join. As such, it should be adopted by the Court.

In addition to mailing the judicial notice, Plaintiff requests that the Court also permit Plaintiff's Counsel to email it to the putative collective class. It is well settled that district courts have broad discretion over how to facilitate judicial notice, see Hoffmann-La Roche, 493 U.S. at 170, and other courts, including courts in the Sixth Circuit, have authorized sending notice by email. See, e.g., Swigart v. Fifth Third Bank, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (authorizing judicial notice via email); Nobles v. State Farm Mut. Auto. Ins. Co., 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011); Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009) (same).

Sending notice by email is particularly appropriate in this case, for three reasons. First, due to the serious concern that many putative class members' claims are at risk of expiring due to the statute of limitations, time is of the essence. Sending judicial notice via email will expedite

the process of notifying the putative class. Second, email would be a far more effective form of notice in this case because the mailing addresses for the putative class members are less likely to be accurate given the transient nature of the job position. Thus sending notice via email will increase the likelihood that putative class will receive it. Lastly, sending notice via email would be equitable given that Corvus has already communicated with the putative collective class when it sent its misleading email. This also underscores the fact that Defendants have access to the email addresses of both its current and former employees, making it an easy task to produce.

Plaintiff asks the Court to order a 90-day notice period for the putative class members to join the case. See Musarra, 2008 WL 818692, at *7; Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68-69 (E.D. Pa. 2009) (stating "a 90-day [opt-in] period is reasonable"); Garcia v. Freedom Mortg. Corp., 2009 WL 3754070, at *1 (D.N.J. Nov. 2, 2009) (ordering a 120-day opt-in period). Lastly, Plaintiff also asks the Court to authorize her to re-send the notice on or about day sixty of the notice period to any putative class member who has not joined the case. See Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (authorizing notice reminders); Gee v. Suntrust Mortg., Inc., 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (same); Swarthout v. Ryla Teleservices, Inc., 2011 WL 6152347, at *3 (N.D. Ind. Dec. 12, 2011) (same). Reminder letters serve to remind those persons who wish to join to do so within the notice period. They also help to reach those persons whose notices were misplaced, not received, or unopened to still have a fair opportunity to join. Moreover, reminder letters will lower the number of late opt-ins, thus reducing the Court's burden of deciding whether late opt-ins should be allowed to join.

### E.  The Court Should Compel Defendants to Produce Information Necessary for Plaintiff to Disseminate Notice to the Putative Collective Class Members.

Should the Court grant Plaintiff's motion, it should also order Defendants to provide Plaintiff with a list of all putative class members and their last-known contact information.

Identifying these individuals is necessary for Plaintiff to accurately, efficiently and quickly distribute judicial notice. See Hoffmann-La Roche, 493 U.S. at 170 (affirming that the district court correctly permitted discovery of employees' names and addresses). Accurate and efficient distribution of judicial notice is precisely why courts routinely order defendants to produce such lists in FLSA cases. See Id. at 165; see also McNelley, 2009 WL 7630236, at *5 (compelling discovery of potential opt-in plaintiffs); Douglas, 2007 WL 1341779, at *5 ("As a practical matter notification of potential plaintiffs suggests allowing discovery of the names of persons similarly situated . . . , and a number of courts permit such discovery.") (collecting cases).[7]

Plaintiff requests that within ten (10) days of its Order granting this motion, the Court also order Defendants to produce to Plaintiff's Counsel a list in Microsoft Excel format of all individuals employed by the Corvus Group, Inc., RSM McGladrey, Inc., McGladrey & Pullen, LLP or McGladrey, LLP, as asset managers, asset servicing professionals, or any other positions that assisted the FDIC with receivership, asset management and other services related to bank failures, and who were paid an hourly rate plus "straight time" for their overtime hours, at any time within three years of the date the Court grants this motion. The list should include each employee's full name, last known address and telephone number, last known personal email address, employee identification number, social security number (last four digits only), and dates of employment.

## IV.    CONCLUSION

This case is appropriate for conditional certification. Plaintiff has demonstrated that is similarly situated to Defendants' Asset Managers because they were uniformly misclassified as

---

[7] Moreover, the identity of putative class members is discoverable on other grounds. See Hoffmann-La Roche, 493 U.S. at 170 (acknowledging the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter").

exempt, worked long hours without receiving proper overtime pay, were paid under the same compensation method, and received an hourly wage plus straight time for overtime. The undisputed facts more than satisfy the lenient first- stage standard. For these reasons, Plaintiff respectfully requests that the Court grant this motion and: (1) conditionally certify this case as a collective action; (2) authorize Plaintiff to send judicial notice to the putative collective class; (3) approve the form, content and distribution plan for Plaintiff's proposed judicial notice; and (4) compel Defendants to produce a list of the putative collective class members.

Dated:  June 8, 2012

**NICHOLS KASTER, PLLP**

*/s/ Andrew G. Chase*
Paul J. Lukas, MN Bar No. 22084X*
Andrew G. Chase, MN Bar No. 0391935*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
achase@nka.com

*Admitted *pro hac vice*


**DWORKEN & BERNSTEIN Co., LPA**

Patrick J. Perotti, OH Bar No. 0005481
Nicole T. Fiorelli, OH Bar No. 0079204
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Fax: (440) 352-3469
pperotti@dworkenlaw.com
nfiorelli@dworkenlaw.com


ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to all parties of record by operation of the Court's electronic filing system.

*/s/ Andrew G. Chase*
One of the Attorneys for Plaintiff