**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DONNA KIESSEL,** | |
| **Plaintiff,** | **CASE NO. 1:12-CV-00390-PAG** |
| **vs.** | **JUDGE PATRICIA GAUGHAN** |
| **THE CORVUS GROUP, INC., *et al.*,** | |
| **Defendants.** | |

**DEFENDANT MCGLADREY LLP'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE**

# **TABLE OF CONTENTS**

I.      Plaintiff's claims are subject to a "hybrid" standard for conditional certification. ..................7

II.     Plaintiff's own brief and declarations establish that McGladrey and Corvus were not joint employers for purposes of the FLSA, and that conditional certification thus should be denied........................................................................................................................................8

   A.      Plaintiff has failed to meet her burden of establishing that McGladrey and Corvus were joint employers for purposes of the FLSA. ..........................................................8

   B.      Plaintiff's own assertions in her brief about Corvus' conduct underscore that McGladrey and Corvus were not acting in concert .......................................................12

   C.      The inquiry into whether McGladrey and Corvus acted as joint employers would require an individualized examination of the circumstances of each putative plaintiff on each FDIC bank closure project................................................................12

III.    Conditional certification should be denied because Plaintiff has not met her burden of establishing that she and other putative plaintiffs are "similarly situated."..............................13

   A.      The determination of whether any given individual is a member of the putative class would require numerous individualized inquiries.................................................14

   B.      Conditional certification should be denied because the resolution of Plaintiff's travel compensation claims would require numerous individualized inquires.............15

   C.      Conditional certification should be denied because Plaintiff and the putative plaintiffs are not "similarly situated" for numerous reasons. ......................................16

IV.     If the Court determines conditional certification is warranted, Plaintiff's proposed notice form should be modified to comply with applicable legal standards. .....................................17

   A.      Plaintiff's proposed notice procedures should be modified in light of the circumstances of the case and applicable law............................................................18

      1.      A 45-day opt-in period without follow-up is appropriate ...……………......18

      2.      Notice by email is not warranted, especially in light of the inherent problems with notice by email identified by the courts ...……………......19

   B.      The substance of Plaintiff's proposed notice is improper and should be revised........20

      1.      Plaintiff's proposed notice does not fully inform putative plaintiffs of their duties and obligations if they join the lawsuit …………………….. .......20

      2.      Plaintiff's proposed notice does not reflect a sense of judicial neutrality........21

3.      Plaintiff's proposed notice is not accurate ……………………………….........21

4.      Plaintiff's proposed notice doe not inform putative plaintiffs of their right
        to choose their own counsel …………………………………………….........22

5.      Plaintiff's proposed consent form is misleading ……………………….. ........23

CONCLUSION …………………………………………………………………………….........23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adair v. Wisconsin Bell, Inc.*,
    No. 08-C-280, 2008 WL 4224360 (E.D. Wisc. Sept. 11, 2008)................................................7

*Baden-Winterwood v. Life Time Fitness*,
    No. 06-cv-99, 2006 WL 2225825 (S.D. Ohio Aug. 2, 2006) ..................................................18

*Bernard v. Household Int'l, Inc.*,
    231 F. Supp. 2d (E.D. Va. 2002) ...........................................................................................17

*Bouthner v. Cleveland Construction, Inc.*,
    NO. RDB-11-0244, 2012 WL 738578 (D. Md. March 5, 2012) .............................................13

*Brooks v. A. Rainaldi Plumbing, Inc.*,
    No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737 (M.D. Fla. Dec. 8. 2006).................1, 8, 11

*Bunyan v. Spectrum Brands, Inc.*,
    No. 07-CV-0089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008) .................................2, 16

*Castillo v. Alkire Subway, LP*,
    No. H-08-cv-2658, 2009 WL 7326074 (S.D. Tex. Apr. 30, 2009)..........................................14

*Castro v. Spice Place, Inc.*,
    No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y Jan. 30, 2009).......................................1, 8, 11

*Comer v. Wal-Mart Stores, Inc.*,
    454 F.3d 544 (6th Cir. 2006) ........................................................................................1, 6, 7

*Creely v. HCR ManorCare, Inc.*,
    789 F. Supp. 2d 819 (N.D. Ohio 2011)....................................................................................6

*Cretin-Miller v. Westlake Hardware, Inc.*,
    No. 08-2351, 2009 WL 2058734 (D. Kan. July 15, 2009) .....................................................21

*Davis v. Charoen Pokphand (USA), Inc.*,
    303 F.Supp.2d 1272, 1276 (M.D. Ala. 2004) ........................................................................26

*Douglas v. GE Energy Reuter Stokes*,
    No. 07-cv-077, 2007 WL 1341779 (N.D. Ohio Apr. 30, 2007) .............................................23

*England v. New Century Fin. Corp.*,
    370 F. Supp. 2d 504 (M.D. La. 2005)...............................................................................13, 17

*Gonzalez v. HCA, Inc.*,
    No. 3:10-00577, 2011 WL 3793651 (M.D. Tenn. Aug. 25, 2011).................................8, 9, 11

iv

*Grove v. ZW Tech, Inc.*,
No. 11-2445-KHV, 2012 WL 1789100 (D. Kan. May 17, 2012)............................................14

*Heaps v. Safelite Solutions, LLC*,
No. 2:10CV729, 2011 WL 1325207 ..................................................................................18

*Hoffman-LaRoche v. Sperling*,
493 U.S. 165 (1989)................................................................................................18, 21

*Int'l Longshoremen's Assoc., AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*,
927 F.2d 900 (6th Cir. 1991) ...............................................................................8, 9, 10

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*,
No. 1:06-CV-456, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2007).....................7, 13, 16, 21

*Jirak v. Abbott Lab., Inc.*,
566 F. Supp. 2d 845 (N.D. Ill. 2008) ........................................................................21

*Kiser v. Pride Communications, Inc.*,
No. 2:11-cv-00165, 2011 U.S. Dist. LEXIS 96888 (D. Nev. June 16, 2011) (not
available on Westlaw)...........................................................................................19

*Knispel v. Chrysler Group LLC*,
No. 11-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012)...................................18, 19, 21

*Kuznyetsov v. West Penn Allegheny Health System, Inc.*,
No. 2:09-cv-0379, 2009 WL 1515175 (W.D. Pa. June 1, 2009) ...........................................19

*Lacy v. Reddy Electric Co.*,
No. 3:11-cv-52, 2011 WL 6149842 (S.D. Ohio Dec. 9, 2011)...............................................21

*McNelly v. Aldi, Inc.*,
No. 1:09-CV-1868, 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009) (Gaughan, J.) ...............17

*Pacheco v. Boar's Head Provisions Co.*,
671 F. Supp. 2d 957 (W.D. Mich. 2009) ...........................................................................17

*Politron v. Worldwide Domestic Servs., LLC*,
No. 3-11-0028, 2011 WL 1883116 (M.D. Tenn. May 17, 2011) .............................................9

*Sheffield v. Orius Corp.*,
211 F.R.D. 411 (D. Or. 2002)...............................................................................................16

*Snide v. Discount Drug Mart, Inc.*,
No. 1:11cv0244, 2011 WL 5434016 (N.D. Ohio Oct. 7, 2011) ....................................6, 21, 23

*Stickle v. SCI Western Market Support Center, L.P.*,
No. 08-083, 2009 WL 3241790 (D. Ariz. Sept. 30, 2009) .....................................................19

*U.S. Dep't of Labor v. Cole Enterprises*,
    62 F.3d 775 (6th Cir. 1995) ...................................................................................8

*Villanueva-Bazaldua v. Trugreen Ltd. Partners*,
    479 F. Supp. 2d 411, 417 (D. Del. 2007) .............................................................16

*Wlotkowski v. Michigan Bell Telephone Co.*,
    267 F.R.D. 213 (E.D. Mich. 2010) ......................................................................24

## STATUTES

29 U.S.C. § 216(b) ...................................................................................................5

## OTHER AUTHORITIES

29 C.F.R. § 785.39 .................................................................................................15

29 C.F.R. § 791.2 ........................................................................................8, 13, 17

## **INTRODUCTION**

This case should not be conditionally certified as a collective action under the Fair Labor Standards Act (the "FLSA"), and in any event cannot be certified as a collective action including Defendant McGladrey LLP ("McGladrey") as a defendant or McGladrey employees as putative plaintiffs. In order to certify a collective action, the plaintiff bears the burden of showing that the putative plaintiffs are "similarly situated." *See, e.g., Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Plaintiff Donna Kiessel has failed to meet this burden.

First, Plaintiff's own evidence demonstrates that, contrary to her bare-bones assertion, McGladrey and Defendant The Corvus Group ("Corvus") were not "joint employers" as to her or anyone else. By her own admissions, Plaintiff was employed solely by Corvus – and not by McGladrey. Similarly, her own evidence shows that each putative plaintiff was employed either by Corvus or by McGladrey. Conditional certification therefore should be denied. *See Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952, at **3-4 (S.D.N.Y Jan. 30, 2009) (denying conditional certification on grounds that plaintiffs failed to meet their burden of presenting evidence that defendants operated as joint employers); *Brooks v. A. Rainaldi Plumbing, Inc.,* No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8. 2006) (same).

Second, other significant and material differences exist among the putative plaintiffs, as well. While Plaintiff alleges that putative plaintiffs were not compensated for compensable travel time, it is undisputed that those putative plaintiffs who opted to travel did so with varying frequency and at various times – a critical point because travel time during non-working hours is not compensable. *See* C.F.R. § 785.39. Moreover, the putative plaintiffs held different job titles, performed distinct job duties, and worked on numerous different FDIC engagements in various states and under different supervisors. For these and other reasons, Plaintiff has failed to meet her

burden of establishing that they are "similarly situated."  *See Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932, at *7 (S.D. Ill. July 31, 2008) (denying plaintiffs' motion for conditional certification because plaintiffs failed to demonstrate "that they were similarly situated with respect to their employment duties and circumstances" even "the employees were paid under the same compensation plan").  Accordingly, conditional certification should be denied, and, in any event, any conditional certification should not include McGladrey or its employees.

## STATEMENT OF FACTS

Plaintiff proposes to bring this putative collective action on behalf of:

> All individuals employed by the Corvus Group, Inc., RSM McGladrey, Inc., McGladrey & Pullen LLP or McGladrey, LLP, as asset managers, asset servicing professionals, or any other positions that assisted the FDIC with receivership, asset management and other services related to bank failures, and who were paid an hourly rate plus "straight time" for their overtime hours, at any time within three years of the date the Court grants this motion.[1]

Plaintiff alleges that McGladrey and Corvus both paid putative plaintiffs "straight time" at their regular rate of pay for hours worked in excess of 40 hours in a given workweek and failed to compensate putative plaintiffs for compensable travel time to and from job project sites.

McGladrey is a provider of assurance, tax and consulting services.  *See* Declaration of Brian D. Holmes ("Holmes Decl."), attached as Exhibit B hereto, at ¶ 2.  The Federal Insurance Deposit Corporation (the "FDIC") has retained McGladrey as a contractor to provide services in connection with bank failures.  *Id*. at ¶3.  In the event of a bank failure, the FDIC acts as the "Receiver" of the failed bank and assumes the task of selling or collecting the assets of the failed bank and settling its debts, including claims for deposits in excess of the insured limit.  *Id*. at ¶ 4. McGladrey provided staff augmentation to the FDIC in support of its mission to resolve failed banks and transition operations of failed banks to acquiring banks or to the FDIC as Receiver.  *Id*.

---

[1] Defendant McGladrey formerly was known as RSM McGladrey, Inc., and McGladrey & Pullen, LLP.

During the relevant time period, McGladrey worked as a contractor to the FDIC on numerous bank closure matters across the country.  *Id.* at ¶ 5.  The McGladrey employees assigned to these matters often were highly educated professionals with CPA or other advanced degrees and years of experience in the field.  *Id.* at ¶ 6.  Their base compensation ranged from $30.00 to $110.00 per hour, and their job titles and responsibilities varied significantly, as well.  *Id.* at ¶¶ 7-8. They ranged from "Managers," responsible for overseeing various post-closing management tasks, to "Professionals," responsible for providing support to different aspects of the engagements (for example, by preparing and analyzing reports, spreadsheets and other asset management information).  *Id.* at ¶¶ 8-9.  These McGladrey employees had various different areas of expertise and specialization.  *Id.* at ¶ 10.

Some of these McGladrey employees applied to work and were hired by McGladrey to work on FDIC engagements in locations away from their homes.  *Id.* at ¶ 11.  They chose to travel to and from engagements with varying frequency, on different days of the week (sometimes on weekdays and sometimes on weekends), and at various different hours of the day and night.  *Id.* Further, some McGladrey employees chose to work a "flex" work schedule, whereby they worked their full workweek Monday through Thursday, and then treated Friday as a non-working day.  *Id.*

McGladrey retained Corvus as a subcontractor on FDIC bank closure projects.  *Id.* at ¶ 12. McGladrey employees and Corvus employees both worked on the FDIC projects at issue in this case.  *Id.* at ¶ 15.  McGladrey and Corvus did *not* jointly employ any employees, however.  *Id.* McGladrey and Corvus are two separate companies with wholly separate ownership and management.  *Id.* at ¶ 13; *see also* Corporate Disclosure Statement of McGladrey (Docket No. 19); Corporate Disclosure Statement of Corvus (Docket No. 15).  They have separate corporate structures, officers, offices, finances and accounts, payrolls, and business records.  *Id.* at ¶ 14.

3

They separately were responsible for hiring, firing, compensating, promoting, disciplining, and all other employment-related decisions regarding their respective employees.  *Id*. at ¶ 16.  Their relationship was governed by an agreement that states: "Corvus shall be fully and exclusively responsible for all benefits and for payment of all wages to its employees . . . "  and that "[n]othing in this Agreement shall be deemed or construed to create a joint venture, partnership, agency, employment or other relationship between the parties for any purpose.  *Id*. at ¶ 18; *see also* Subcontract Agreement, attached as Exhibit C hereto, at ¶¶ 6, 9(a).

Plaintiff filed a detailed declaration in support of her motion for conditional certification. In her declaration, she explicitly states that she was employed by Corvus – and only Corvus – as a senior professional and asset servicing professional.  *See* Brief Exhibit I (stating that "I was employed by Corvus").  She admits that she was hired and paid by Corvus, and that Corvus classified her as an "exempt" employee under the FLSA, directed her employment, and required her to adhere to its policies.  *See id.* at ¶¶ 2, 4-7, 10-11.  She does not allege in her declaration that she was employed by McGladrey, and none of the facts in her declaration support such a finding. *Id.*

Similarly, in each of the 22 declarations submitted by putative plaintiffs, the declarant states that he or she was employed by and worked for *either* Corvus *or* McGladrey.  *See* Brief Exhibits B, D, F, L, P, U-X  (each stating that "I was employed by Corvus"); Brief Exhibits C, E, G-H, J-K, M-O, Q-T (each stating that "I was employed by McGladrey").  No declarant alleges that he or she was an employee of both companies or sets forth any facts that would support such a finding.  *Id.*  Rather, each declarant concedes that the same company that employed him or her also hired him or her, paid him or her, classified him or her as an "exempt" employee for FLSA purposes, directed his or her employment, and required him or her to adhere to that company's

4

policies.  *See id.* at ¶¶ 2, 4-7, 10-11.  The declarants state that they worked in nine distinct job positions for either McGladrey or Corvus, ranging from "asset manager" to "servicing professional" to "investigations manager" to "operations professional."  *See id.* at ¶ 2.  The individuals who filed opt-in consent forms in this case to date worked on different FDIC bank closure projects in 16 different states.  *See* Declaration of Andrew G. Chase in Support of Brief (Docket No. 50-2) ("Chase Decl.") at ¶ 8.

    While Plaintiff takes issue in her Brief with certain alleged conduct by Corvus, McGladrey had no involvement in any of this alleged conduct.  Plaintiff points to litigation by Corvus against Plaintiff's counsel regarding pre-suit mailings to putative plaintiffs.  *See* Brief at 5-7.  McGladrey was not a party to or otherwise involved in this dispute or litigation, as Plaintiff's own allegations concede.  *Id.* at ¶ 19.  Plaintiff also takes issue with an email from Corvus to its former employees regarding a pre-suit investigation and mailings to putative plaintiffs by Plaintiff's counsel.  *See* Brief at 7, 14-16.  McGladrey did not have any involvement in this communication.  *Id.* at ¶ 20.  Finally, Plaintiff alleges in her brief that "Defendants refused to produce deponents as requested by Plaintiff."  Brief at 3, fn. 3.  Again, this allegation relates solely to Corvus, as McGladrey never refused to produce any deponent for a deposition in this case.  *See* Declaration of Sarah M. Konsky ("Konsky Decl."), attached as Exhibit D hereto, at ¶ 6; *see also* Chase Decl. (Docket 50-2) at ¶ 9 (stating that *Corvus* refused to produce deponents for noticed depositions).

## ARGUMENT

    This case should not be conditionally certified as a collective action, much less a collective action that includes McGladrey as a defendant or its employees as putative plaintiffs.  Section 216(b) of the FLSA allows a plaintiff to pursue an action on behalf of herself and other "similarly situated" employees.  *See* 29 U.S.C. § 216(b).  In order to conditionally certify a collective action,

the plaintiff must show that the putative plaintiffs are "similarly situated" to each other.  *See, e.g., Comer*, 454 F.3d at 546; *Snide v. Discount Drug Mart, Inc*., No. 1:11cv0244, 2011 WL 5434016, at *6-8 (N.D. Ohio Oct. 7, 2011).  Because the applicable "similarly situated" determination "does not touch upon the merits of plaintiffs' claims" (*see, e.g., Creely v. HCR ManorCare, Inc*., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)),[2] McGladrey appropriately focuses solely on the issue of conditional certification in this brief.  If this case were to proceed further – which it should not – McGladrey would have compelling substantive defenses to Plaintiff's allegations (and does not waive its arguments regarding such merits).

At this stage, though, it is clear Plaintiff has not met her burden for the following reasons:

- Plaintiff herself was employed solely by Corvus, and each putative plaintiff was employed solely by Corvus or solely by McGladrey.  Plaintiff's own evidence demonstrates that they were not "joint employers," and critically that McGladrey was not her joint employer.  Therefore, no class should be conditionally certified, and in any event McGladrey and its employees cannot be included in any such certification.

- Significant differences exist throughout the class, as the putative plaintiffs engaged in different travel practices, had different job titles and duties, and worked on numerous different FDIC engagements in various states and under different supervisors.  These differences preclude conditional certification with respect to all claims and, even assuming arguendo that they do not, the wide-ranging differences in individual circumstances militate against any such certification of the travel compensation claims.

---

[2] This is a point on which the parties agree, as Plaintiff asserts in her brief that "courts do not consider the merits of the claims" or "decide substantive issues" at the conditional certification stage.  *See* Brief at 9.

## I.      Plaintiff's claims are subject to a "hybrid" standard for conditional certification.

Where, as here, the parties have engaged in pre-certification discovery, a plaintiff seeking

conditional certification must make a "modest 'plus' factual showing" that the putative plaintiffs

are "similarly situated" – a higher standard of proof requiring her to present evidence above and

beyond a "modest factual showing."  *See Comer*, 454 F.3d at 546; *Jimenez v. Lakeside Pic-N-Pac,*

*L.L.C.*, No. 1:06-CV-456, 2007 WL 4454295, at \*2  (W.D. Mich. Dec. 14, 2007) ("[W]here the

parties have had an opportunity to conduct pre-certification discovery, courts tend to hold plaintiffs

to a higher standard of proof."); *see also Davis v. Charoen Pokphand (USA), Inc.,*, 303 F. Supp. 2d

1272, 1276 (M.D.Ala. 2004) ("This rationale [for the lenient standard] disappears, however, once

plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and

procedures.").  Here, in accordance with the Court's Order (Docket No. 39), the parties engaged in

pre-certification discovery.  Each party both served and responded to extensive written

interrogatories and documents requests, resulting in the production of more than 6,750 pages of

responsive documents by the parties.  Konsky Decl. at ¶ 4.

And in all events, even if the Court adopts the more lenient "modest factual showing"

standard suggested by Plaintiff, Plaintiff still fails to meet her burden of showing that the putative

plaintiffs are "similarly situated."  As another district court has recognized:

> [Conditional certification] serves as an important and functional step in the
> certification process.  Where the plaintiff has not made at least a modest factual
> showing that certification is appropriate, it would be a waste of the Court's and the
> litigants' time and resources to notify a large and diverse class only to later
> determine that the matter should not proceed as a collective action because the class
> members are not similarly situated.

*Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at \*4 (E.D. Wisc. Sept. 11, 2008)

(internal brackets and quotation marks omitted).

II.     **Plaintiff's own brief and declarations establish that McGladrey and Corvus were not joint employers for purposes of the FLSA, and that conditional certification thus should be denied.**

Plaintiff alleges that McGladrey and Corvus are "joint employers" of some or all putative plaintiffs based solely on her unsupported assertion that "[t]ogether, Defendants employed Asset Managers to perform these FDIC Projects at banks across the country."  Brief at 4; *see also* Complaint (Docket No. 1) at ¶¶ 11, 38 (making unsupported assertion that "[b]oth Corvus and McGladrey are individually and jointly responsible for complying with all provisions of the FLSA, pursuant to 29 C.F.R. § 791.2.").  The plaintiff bears the burden at the conditional certification stage to present evidence that the defendants acted as a joint employer.  *See Castro*, 2009 WL 229952, at **3-4 (denying conditional certification because plaintiffs failed to meet their burden of presenting evidence that defendants operated as joint employers); *Brooks*, 2006 WL 3544737, at *2 (same).  Plaintiff – who concedes she was employed solely by Corvus – provides no evidence whatsoever that Corvus and McGladrey were joint employers of her or any other putative plaintiff.

A.     **Plaintiff has failed to meet her burden of establishing that McGladrey and Corvus were joint employers for purposes of the FLSA.**

The Sixth Circuit has held that "[t]here are four factors which must be analyzed in determining whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."  *Int'l Longshoremen's Assoc., AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991), [3] *quoting Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982).  The mere fact that two companies followed

---

[3] While this case arose under the Railway Labor Act, the Sixth Circuit and its district courts routinely apply this same test in FLSA cases.  *See, e.g., Gonzalez v. HCA, Inc.*, No. 3:10-00577, 2011 WL 3793651, at *12 (M.D. Tenn. Aug. 25, 2011) (denying motion for conditional certification in FLSA case based on this four-factor test); *see also U.S. Dep't of Labor v. Cole Enter.*, 62 F.3d 775 (6th Cir. 1995) (holding that chief executive offer was an "employer" for purposes of the FLSA because he was an officer of the company, had significant ownership interest in it, controlled sufficient functions of it, and determined its employment practices).

similar policies in compensating employees is *not* enough to establish that they are joint employers.  *See Castro*, 2009 WL 229952 at **3-4.

None of the four factors for joint employer status is present here.  It is undisputed that McGladrey and Corvus do not have any common ownership or common management.  *See* Holmes Decl. at ¶ 13; *see also* Corporate Disclosure Statement of McGladrey (Docket No. 19); Corporate Disclosure Statement of Corvus (Docket No. 15).  Their operations are far from interrelated, as they have separate corporate structures, corporate officers, management, offices, finances, bank accounts, payrolls, business records, and employees.  Holmes Decl. at ¶ 14.  *See, e.g.*, *Gonzalez v. HCA, Inc.*, No. 3:10-00577, 2011 WL 3793651, at *13 (M.D. Tenn. Aug. 25, 2011) ("These entities maintain separate bank accounts, financial records, payroll records as well as control their real estate, leases, equipment, and supplies. . . . These facts do not establish common management or interrelation of operations . . . .").

McGladrey and Corvus also do not have centralized control of labor relations, as they have separate employees and separate responsibility for hiring, firing, promoting, compensating and disciplining their own employees.  Holmes Decl. at ¶ 16; *see also Politron v. Worldwide Domestic Servs., LLC*, No. 3-11-0028, 2011 WL 1883116, at *3 (M.D. Tenn. May 17, 2011).  Thus, while Corvus and McGladrey coordinated recruiting efforts for FDIC engagements, McGladrey had sole responsibility for approving and ultimately hiring all McGladrey employees, and for all other employment decisions regarding its employees.  Holmes Decl. at ¶ 16.  Similarly, while McGladrey had general contractor oversight responsibilities in connection with these engagements, Corvus ultimately had sole responsibility for all employment decisions regarding its employees. *Id.* at ¶ 17.  The arms-length contractor agreement between McGladrey and Corvus confirms this, noting that "Corvus shall be fully and exclusively responsible for all benefits and for payment of

9

all wages to its employees . . . ."  and that "[n]othing in this Agreement shall be deemed or construed to create a joint venture, partnership, agency, employment or other relationship between the parties for any purpose."  *See* Exhibit C at ¶¶ 6, 9(a).

The declarations submitted by Plaintiff dispel her naked assertion of a joint employment relationship.  Her own declaration explicitly states: "I was employed by Corvus."  *See* Brief at Exhibit I.  She further admits in her declaration that she was hired by Corvus, paid by Corvus, classified as an "exempt" employee for FLSA purposes by Corvus, directed in her employment by Corvus, and subject to Corvus policies.  *See id.* at ¶¶ 2, 4-7, 10-11.  She does not allege in her declaration that she was employed by McGladrey, and none of the facts in her declaration support such a finding either.  *Id.*  In fact, her sworn declaration is devoid of any mention of McGladrey, but for a passing reference to it being a party to this lawsuit.  *Id.*

The detailed declarations submitted by the other putative plaintiffs follow suit.  Each declaration states that the declarant was employed by and worked for *either* Corvus *or* McGladrey.  *See* Brief Exhibits B, D, F, L, P, U-X  (each stating "I was employed by Corvus"); Brief Exhibits C, E, G-H, J-K, M-O, Q-T (each stating "I was employed by McGladrey").  Each declarant concedes that the same company that employed him or her also hired him or her, paid him or her, classified him or her as an "exempt" employee for FLSA purposes, directed his or her employment, and required him or her to adhere to that company's policies.  *See id.* at ¶¶ 2, 4-7, 10-11.  No declarant alleges that he or she was employed by both of the companies at the same time, or even sets forth any facts supporting such a finding.  *Id.*  To the contrary, no declarant even mentions the other company, except for in listing the parties to the lawsuit.  *Id.* at ¶ 1.

Moreover, the fact that one company had a contractor relationship with another is insufficient to establish a joint employer relationship.  In *International Longshoremen's*

*Association*, the Sixth Circuit held that a company was *not* a joint employer of the employees of its contractor, despite the facts that the company owned the facility, paid a fee to the contractor, paid all operating costs, was fully advised as to the contractor's labor negotiations, recommended reductions in employee numbers, and had input on employee schedules, overtime, and pay.  927 F.2d at 902-03 (reversing as "clearly erroneous" the district court's ruling that there was a joint employer relationship).  As the Court stated:  "These facts do not support a determination that [company] and [contractor] were joint employers, nor do they indicate that operations of the two companies were substantially interrelated beyond the extent necessary to the performance of their basic contractual duties."  *Id.* at 903.

Because Plaintiff has failed to provide any support for her bare-bones assertion that McGladrey and Corvus were joint employers, conditional certification should be denied.  *See, e.g., Castro*, 2009 WL 229952, at **3-4  (denying conditional certification because, even assuming that defendants followed similar policies with regard to compensation of the putative plaintiffs, the plaintiffs had not met their burden of presenting evidence that defendants operated as joint employers); *Brooks*, 2006 WL 3544737, at *2 (denying conditional certification where "Plaintiffs have given no explanation as to why [defendants] should be considered . . . joint employers of the putative class" and "[e]ach affidavit submitted by Plaintiffs support that the affiants worked for one company or the other").  Alternatively, employees of McGladrey are not "similarly situated" to employees of Corvus because they were employed by two different employers.  *See* Section III below.  Accordingly, because Plaintiff has not met her burden of establishing that McGladrey was a joint employer with Corvus, and because the sole named plaintiff was employed only by Corvus, any collective action certified in this matter should include only Corvus and its employees – and should not include McGladrey or its employees.  *See, e.g., Gonzalez*, 2011 WL 3793651, at *15.

11

**B.      Plaintiff's own assertions in her brief about Corvus' conduct underscore that McGladrey and Corvus were not acting in concert.**

Plaintiff's reference to certain alleged conduct by Corvus demonstrates that Corvus and McGladrey have acted independently.  In particular, McGladrey notably was not involved in any of this conduct – further supporting the fact that Corvus and McGladrey were not acting in concert as joint employers.  First, Plaintiff devotes nearly two pages of her brief to summarizing litigation by Corvus against Plaintiff's counsel regarding certain pre-suit mailings to putative plaintiffs.  *See* Brief at 5-7.  As Plaintiff's own allegations make clear, McGladrey was not a party to or otherwise involved in this dispute.  Holmes Decl. at ¶ 19.  Second, Plaintiff takes issue with an email from Corvus' CEO and President to putative plaintiffs who had been employed by Corvus regarding a pre-suit investigation and mailings to putative plaintiffs by Plaintiff's counsel.  *See* Brief at 7, 14-16.  Again, McGladrey did not have any involvement in this communication.  Holmes Decl. at ¶ 20.  Finally, Plaintiff alleges that "Defendants refused to produce deponents as requested by Plaintiff."  Brief at 3, fn. 3.  Again this allegation relates solely to Corvus, as McGladrey and its counsel never refused to produce any deponent for a deposition in this matter.  Konsky Decl. at ¶ 6; *see also* Chase Decl. (Docket No. 50-2) at ¶ 9 (alleging that "counsel for Defendant The Corvus Group, Inc. informed me via email that Corvus was refusing to produce deponents for Plaintiff's noticed depositions").  Each of these examples further illustrates that, far from engaging in the common operations or common labor relations of joint employers, Corvus and McGladrey acted as two wholly separate and distinct companies.

**C.      The inquiry into whether McGladrey and Corvus acted as joint employers would require an individualized examination of the circumstances of each putative plaintiff on each FDIC bank closure project.**

Plaintiff's joint employer allegations render certification inappropriate because even assuming for sake of argument that Plaintiff had provided evidence that a joint employer

relationship potentially could exist (which she has not), this issue still would require individualized

inquiries.  "A determination of whether the employment by the employers is to be considered joint

employment or separate and distinct employment for purposes of the act depends upon *all the facts*

*in the particular case*."  29 CFR § 791.2(a) (emphasis added).  This case involves putative

plaintiffs who worked on more than 50 bank closure projects scattered across the country, many of

which had different management.  Holmes Decl. at ¶ 5.  Accordingly, the question of whether

McGladrey and Corvus acted as joint employers with respect to any given employee – including

by coordinating on operations or labor issues – would require the Court to make fact-intensive,

individualized inquiries into the circumstances surrounding their interactions and relationship on

the particular project at issue, as well as with respect to the employment of the particular employee

as issue.  As another district court summarized this issue when denying conditional certification:

> In this case, to determine the economic reality of the employment relationship between the
> Defendants and the Plaintiffs, individualized questions would necessarily predominate
> regarding which defendant hired each plaintiff, which defendant supervised them, which
> defendant determined their rate of pay, and the interaction and relationship between the
> individual defendant.  Moreover, because the Plaintiffs allegations span two distinct
> construction sites, this analysis would necessarily have to be conducted twice.

*Bouthner v. Cleveland Const., Inc.*, NO. RDB-11-0244, 2012 WL 738578 at *7 (D. Md. March 5,

2012).  Conditional certification therefore should be denied on this basis, as well.  *Id.*

**III.    Conditional certification should be denied because Plaintiff has not met her burden of
establishing that she and other putative plaintiffs are "similarly situated."**

Regardless of whether the Court applies the rigorous heightened standard or the early-case

standard (*see* Section I, *supra*), Plaintiff falls far short of meeting her burden.  Members of a

putative class are not similarly situated where, as here, significant differences exist among them

and individualized issues predominate.  *See, e.g., Jimenez*, 2007 WL 4454295 at *6 (denying

conditional certification because establishing liability would require the Court "to sort through

evidence individual by individual, and paycheck by paycheck"); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying conditional certification where it was "clear that individual inquiries must predominate").

>    **A.  The determination of whether any given individual is a member of the putative class would require numerous individualized inquiries.**

Plaintiff's vague and ambiguous proposed putative class is not appropriate for certification. *See, e.g., Castillo v. Alkire Subway, LP*, No. H-08-cv-2658, 2009 WL 7326074, at *1 (S.D. Tex. Apr. 30, 2009) (rejecting plaintiff's proposed class definition because it creates "confusion"); *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *4 (D. Kan. May 17, 2012) (declining to make final determination as to whether action should proceed as collective action where plaintiffs "do not clearly define the collective class which they seek to certify . . . ."). Plaintiff defines her proposed putative class as:

>    All individuals employed by the Corvus Group, Inc., RSM McGladrey, Inc., McGladrey & Pullen LLP or McGladrey, LLP, as asset managers, asset servicing professionals, or any other positions that assisted the FDIC with receivership, asset management and other services related to bank failures, and who were paid an hourly rate plus "straight time" for their overtime hours, at any time within three years of the date the Court grants this motion.

*See* Brief at 7.  The inclusion of the phrase "any other positions that assisted the FDIC with receivership, asset management and other services related to bank failures" makes this an entirely amorphous and imprecise class definition.  Given the use of the overly broad phrase "assisted the FDIC," in particular, any number of jobs or tasks arguably could fall within this definition and it could well include individuals that even Plaintiff did not contemplate or intend to include.

In addition, if this proposed putative class were certified, the Court would be required to undertake numerous fact-specific inquiries just to determine whether a given employee is in fact a putative plaintiff.  The declarations submitted by Plaintiff in support of her conditional certification motion show that the declarants alone worked in nine distinct job positions, ranging

from "asset manager" to "servicing professional" to "investigations manager" to "operations professional."  *See* Section III.B, *infra*.  Because Plaintiff has failed to define her proposed putative class with any meaningful precision, the question of whether any given employee worked in a "position that assisted the FDIC with receivership, asset management and other services related to bank failures" would require individualized inquiries into that employee's job duties.

### B. Conditional certification should be denied because the resolution of Plaintiff's travel compensation claims would require numerous individualized inquiries.

Some putative plaintiffs chose to apply for and work on FDIC engagements in locations away from their homes.  Holmes Decl. ¶ 11.  In her Complaint, Plaintiff alleges that any such putative plaintiffs who opted to make trips home during their work on FDIC engagements should be compensated for all hours they spent traveling.  The putative plaintiffs simply are not similarly situated with respect to travel, however.  Putative plaintiffs working on engagements away from home opted to travel back home with varying frequency – some choosing to make regular trips home during the duration of the engagement, and others opting to stay at their engagement locations in lieu of traveling home.  *Id.*  Moreover, they also had widely differing practices with respect to the times that they traveled – traveling both on weekends and on weekdays, and traveling at various hours of the day and night.  *Id.*  Further, some McGladrey employees chose to work a "flex" work schedule, whereby they worked their full workweek Monday through Thursday, and then treated Friday as a non-working day.  *Id.*

Critically for purposes of conditional certification, travel time during non-working hours is not compensable. *See* 29 C.F.R. § 785.39.  Accordingly, even taking Plaintiff's allegations as true for sake of argument, McGladrey could not have violated the FLSA by failing to compensate any putative plaintiff for travel time during non-working hours.  As a result, merely to determine *liability*, the Court would have to review each employee's travel schedule to determine whether the

particular travel time was compensable, which varies by employee and by week. This type of individualized inquiry is exactly the kind that should preclude conditional certification. *See, e.g., Villanueva-Bazaldua v. Trugreen Ltd. Partners*, 479 F. Supp. 2d 411, 417 (D. Del. 2007) (denying conditional certification of FLSA claim where individualized inquires "go[] to the heart of the claim, and the 'similarly situated' inquiry"). Thus, the material differences in the putative plaintiffs' travel practices are fatal to Plaintiff's argument that they are "similarly situated." *See, e.g., Jimenez*, 2007 WL 4454295 at *6 (denying certification because establishing liability would require the Court "to sort through evidence individual by individual, and paycheck by paycheck").

> ### C. Conditional certification should be denied because Plaintiff and the putative plaintiffs are not "similarly situated" for numerous reasons.

While Plaintiff argues that a common pay practice used by both McGladrey and Corvus should be sufficient standing alone to warrant conditional certification, this is not correct. Rather, Plaintiff also must establish that the members of her proposed putative class are "*similarly situated.*" *See Bunyan*, 2008 WL 2959932, at *7 (denying motion for conditional certification because plaintiffs failed to show they were similarly situated, even though they provided evidence that "the employees were paid under the same compensation plan"). The putative plaintiffs worked for two different employers in a variety of jobs with significantly differing duties. Holmes Decl. at ¶ 8. The 23 declarants alone assert that they worked in nine different job positions for either McGladrey or Corvus – ranging from management roles (*see, e.g.,* Brief Exhibits Q, T, W), to operations roles (*see* Brief Exhibit X), to servicing roles (*see* Brief Exhibits E-F, I, R).

Given the numerous and varying job titles and job duties of the putative plaintiffs, Plaintiff has not met her burden of establishing that they are "similarly situated" and that conditional certification is proper. *See Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying plaintiffs' motion for conditional certification because, among other reasons, the "class members

16

held different job titles").  The putative class members also are not "similarly situated" given the conflicts between the management-level employees in the putative class, who had responsibility for enforcing the policies that they now challenge, and the other members of the putative class. Holmes Decl. at ¶ 8; *see, e.g.*, *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 965 (W.D. Mich. 2009) (expressing concern "about the conflicts between the various Plaintiffs insofar as some of the Plaintiffs were themselves responsible for the timing and length of breaks or the documentation of the breaks").  Plaintiff's reliance on *McNelly v. Aldi, Inc*., No. 1:09-CV-1868, 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009) (Gaughan, J.), is misplaced because the putative plaintiffs in that case held the same job titles and performed the same job duties.

Similarly, despite Plaintiff's assertion that the putative plaintiffs "worked on the same types of FDIC projects" (*see* Brief at 10), the employees who have filed opt-in consents in this case to date worked on projects at 20 different worksites and under different supervisors.  *See* McGladrey's Responses to Plaintiffs' Interrogatories, attached hereto as Exhibit E.  As a result, to evaluate Plaintiff's claims, the Court would need to determine how McGladrey's and Corvus' policies were applied to each of their respective employees on each project, given that the employees worked with different managers at different worksites.  *See England*, 370 F. Supp. 2d at 511 (finding "individual inquires" predominate because members of the putative class worked with "different managers at different geographical locations across the country"); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d, 435 (E.D. Va. 2002) (declining to certify nationwide class because evidence "focus[es] on the acts of supervisors at the individual offices" in Virginia only). Plaintiff therefore has not met her burden of establishing that the putative plaintiffs are similarly situated.

**IV.     If the Court determines conditional certification is warranted, Plaintiff's proposed notice form should be modified to comply with applicable legal standards.**

Plaintiff's proposed notice and procedures for distribution do not comply with well-settled

standards and, accordingly, must be revised.  *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170

(1989) (putative plaintiffs should receive "accurate and timely notice concerning the pendency of

the collective action, so that they can make informed decisions about whether to participate").

McGladrey's proposed notice incorporating the changes set forth below is attached hereto as

Exhibit A.

      **A.**     **Plaintiff's proposed notice procedures should be modified in light of the circumstances of the case and applicable law.**

        **1.**     **A 45-day opt-in period without follow-up is appropriate.**

An opt-in period of 45 days, rather than the 90-day opt-in period proposed by Plaintiff, is

warranted.  Courts routinely find 45 days to be an appropriate window for putative plaintiffs to

opt-in to a collective action, as such time period "satisfies the need to prevent delay in th[e]

litigation while also allowing potential plaintiffs time to fully consider their options."  *Heaps v.

Safelite Solutions, LLC,* No. 2:10CV729, 2011 WL 1325207, at *9 (S.D. Ohio April 5, 2011).  For

this reason, Plaintiff's proposed 90-day period would unnecessarily delay the litigation.  *See

Baden-Winterwood v. Life Time Fitness*, No. 06-cv-99, 2006 WL 2225825, at *3 (S.D. Ohio Aug.

2, 2006) (rejecting 60-day period as "too long").  Throughout her Brief, Plaintiff emphasizes her

concern about the running statute of limitations – a factor that plainly counsels in favor of a shorter

opt-in period.  *See Knispel*, 2012 WL 553722, at *8 (adopting defendant's proposed 45-day notice

period given plaintiff's statute of limitations concerns).  Moreover, because Plaintiff's counsel

already sent solicitations to putative plaintiffs regarding the subject matter of this case (*see* Brief at

5-6), many putative plaintiffs already know about the case and thus will not need a long period of

time in which to consider opting in.

Regardless of the length of the opt-in period, the Court should deny Plaintiff's request to

send out a second "reminder notice" during the opt-in period as wholly inappropriate and

unnecessary.  Courts regularly deny such requests because "reminder notices" are at odds with the purpose of judicial notice, which is "simply to inform potential class members of their rights." *Wlotkowski v. Michigan Bell Telephone Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (denying plaintiff's request for a second "reminder notice").  Moreover, courts have recognized that reminder notices can potentially mislead putative plaintiffs and "could potentially be interpreted as encouragement by the Court to join the lawsuit." *Knispel*, 2012 U.S. Dist. LEXIS 21188, at *8 (denying plaintiff's request for a second "reminder notice").  Any argument in support of a second "reminder notice" in this case also is undercut by the fact that Plaintiff's counsel already sent solicitations to putative plaintiffs.  *See* Brief at 6-7.

### 2. Notice by email is not warranted, especially in light of the inherent problems with notice by email identified by the courts.

While Plaintiff also requests that notice be sent to putative plaintiffs by email, sending notice by email is inherently problematic and thus frequently rejected by courts.  *See*, *e.g.*, *Kiser v. Pride Commc'n, Inc.*, No. 2:11-cv-00165, 2011 U.S. Dist. LEXIS 96888, at *9 (D. Nev. June 16, 2011) (rejecting plaintiff's request for distribution via email); *Stickle v. SCI W. Market Support Center, L.P.,* No. 08-083, 2009 WL 3241790, at *22-23 (D. Ariz. Sept. 30, 2009) (same).  The Court in Plaintiff's own legal authority – *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 2:09-cv-0379, 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009) – in fact rejected the plaintiff's request for notice by email.  Discussing the objectionable nature of email notice, the court stated:

> In contract to first-class mail, electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.  Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process.  In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately targeted audience received the intended notification and maximizes the integrity of the notice process.

19

*Id.* (quoting *Reab*, 214 F.R.D. at 630-31).

Plaintiff's arguments in support of her request for email notice fall flat. Sending judicial notice via email will not materially expedite the notification process. In addition, there is no basis for Plaintiff's speculation that putative plaintiffs are more likely to receive notices by email than by U.S. Mail. Plaintiff's assertion that putative plaintiffs were shorter-term employees of McGladrey or Corvus is misplaced. Given that many of the putative plaintiffs were well-established professionals, often with advanced degrees and base pay ranging from $30 to more than $100 an hour (*see* Holmes Dec. at ¶ 7), there is no basis for an assumption that they are particularly likely to be unreachable by mail.

There similarly is no merit to Plaintiff's assertion that "equity" requires sending notice via email because, prior to the filing of this lawsuit, Corvus sent an email to putative plaintiffs employed by Corvus regarding Plaintiff's allegations. *See* Brief at 16. It bears noting that Plaintiff's counsel, too, communicated with putative plaintiffs regarding Plaintiff's allegations prior to the filing of the lawsuit. *See* Brief at 5-6. Critically, though, none of this involves any conduct by McGladrey. *Id.* Plaintiff does not accuse McGladrey of having any similar communications with putative plaintiffs, and McGladrey in fact did not. Holmes Decl. at ¶ 20. Thus, even if the Court finds that heightened notice procedures are warranted for Corvus, the Court should not apply heightened notice procedures to McGladrey or its employees.

**B.**   **The substance of Plaintiff's proposed notice is improper and should be revised.**

**1.**   **Plaintiff's proposed notice does not fully inform putative plaintiffs of their duties and obligations if they join the lawsuit.**

Plaintiff's proposed notice does not provide information required to allow putative plaintiffs to make an informed decision regarding whether or not to opt-in. Specifically, it fails to disclose that they may be required to be respond to written discovery, sit for a deposition, or testify

at trial. *See, e.g., Snide*, 2011 WL 5434016, at *7 (requiring notice to advise putative plaintiffs that if they elect to join the lawsuit, they may be required to provide information, give a deposition or testify in court); *Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012) (same); *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *6 (S.D. Ohio Dec. 9, 2011) (same). It also fails to inform putative plaintiffs that if they do not prevail on their claims, they may be liable for court costs and expenses. *See Snide*, 2011 WL 5434016, at *6 ("[T]he notice shall contain a statement that the opt-in plaintiffs could be liable for the payment of [defendant]'s costs if it prevails."); *Cretin-Miller v. Westlake Hardware, Inc.*, No. 08-2351, 2009 WL 2058734, at *3-5 (D. Kan. July 15, 2009) (same).

**2.      Plaintiff's proposed notice does not reflect a sense of judicial neutrality.**

Notices sent to putative plaintiffs must "be scrupulous to respect judicial neutrality . . . [and] take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche*, 493 U.S. at 174. Plaintiff's proposed notice nevertheless includes the Court's name and the case caption at the top, improperly suggesting that "the Court has lent its imprimatur to the merits of the case." *Jirak v. Abbott Lab., Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008) (prohibiting plaintiffs from using the Court's name in notice headline). Further, the inclusion of Plaintiff's counsel's contact information in bold is excessive and unnecessary. To reflect a sense of "judicial neutrality," the proposed notice and consent form should include a statement in bold print stating "[t]he Court neither encourages you nor discourages you from joining this lawsuit" – language approved by another federal district court in Ohio. *Lacy*, 2011 WL 6149842, at *6.

**3.      Plaintiff's proposed notice is not accurate.**

As discussed in Section III.A, *supra*, the Plaintiff's definition of the putative class is vague and ambiguous. Assuming that the Court conditionally certifies a putative collective action, its definition must be limited. Thus, the definition in the "TO" field should be limited to senior

professionals and asset servicing professionals employed by Corvus (the positions held by

Plaintiff).  Moreover, while Plaintiff includes in the putative class definition in her Brief the

requirement of being paid "an hourly rate plus 'straight time' for their overtime hours," this

requirement is omitted from the proposed notice.  This omission could lead individuals who are

not properly part of the putative class (*e.g.*, because they did not work overtime hours or were not

paid in this manner) to incorrectly believe that they can opt-in to the case.

Plaintiff states in her proposed notice that: "The Plaintiff in this lawsuit alleges that the

Corvus Group and McGladrey violated the Fair Labor Standards Act by failing to pay *proper*

overtime compensation . . . ."  *See* Brief Ex. A at 1 (emphasis added).  This erroneously suggests

that the question in this case is whether overtime due was calculated correctly and improperly

includes McGladrey.  To be accurate, the notice instead should state:  "The Plaintiff alleges that

the Corvus Group violated the Fair Labor Standards Act by failing to pay overtime compensation

*required by law . . . .*"  (Emphasis added).  Similarly, Plaintiff states in the following sentence:

"Specifically, the Plaintiff alleges that Corvus Group and McGladrey paid her 'straight time' for

her overtime hours instead of one and one-half times her hourly rate."  *See* Brief Ex. A at 1.  This

incorrectly suggests that this necessarily constitutes a violation of law and wrongly includes

McGladrey.  To be accurate, this sentence instead should state:  "Specifically, the Plaintiff alleges

that Corvus Group *violated the FLSA by improperly classifying her an exempt employee for*

*purposes of the FLSA.*"  (Emphasis added).

> **4.  Plaintiff's proposed notice does not inform putative plaintiffs of their
> right to choose their own counsel.**

By stating "[s]hould you choose to join this lawsuit your interests will be represented by

Plaintiffs' Counsel, Nichols Kaster, PLLP," Plaintiff's proposed notice suggests that putative

plaintiffs cannot choose to be represented by counsel of their own choosing.  The notice should

make clear that putative plaintiffs have their right to choose their own counsel. *See, e.g., Snide*, 2011 WL 5434016, at \*7; *Douglas v. GE Energy Reuter Stokes*, No. 07-cv-077, 2007 WL 1341779, at \*17 (N.D. Ohio Apr. 30, 2007).

### 5. Plaintiff's proposed consent form is misleading.

In the second paragraph of the consent form, the phrase "[w]ithin the past three years" could be confusing and should be replaced with the start date and end date of the putative class period. Also, in the final sentence of the second paragraph of the consent form, the phrase "proper" is misleading and suggests a determination on the merits of the case. Accordingly, that sentence instead should state: "There were occasions when I worked more than forty hours in a workweek, but I did not receive compensation at a rate of one-and-a-half times my regular rate of pay for each hour worked over forty." Finally, the third paragraph of the consent form about denial of certification is unnecessary and should be deleted.

## <u>CONCLUSION</u>

Plaintiff has failed to meet her burden of establishing that conditional certification is warranted. As Plaintiff's declaration makes clear, she was employed only by Corvus – and not by McGladrey. Similarly, as the putative plaintiffs' declarations make clear, each putative plaintiff was employed only by Corvus or by McGladrey – and not by both of them as "joint employers." In addition, other material differences among the putative plaintiffs predominate, making certification improper. Because Plaintiff has failed to make a sufficient showing that the putative plaintiffs are similarly situated, conditional certification is not appropriate and should be denied. In the alternative, (1) no class should be conditionally certified with respect to McGladrey or its employees and (2) no class should be certified with respect to the travel compensation claims.

Respectfully submitted,


_/s/ Rachel F. Margolis_
John B. Lewis (0013156)
Todd A. Dawson (0070276)
Jeffrey R. Vlasek (0082771)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Steven T. Catlett, IL Bar No. 6269229
    _Admitted pro hac vice_
Sarah M. Konsky, IL Bar No. 6283286
    _Admitted pro hac vice_
Rachel F. Margolis, IL Bar No. 6297116
    _Admitted pro hac vice_
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Attorneys for Defendant
McGladrey LLP

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to all parties of record by operation of the Court's electronic filing system.

/s/ *Rachel F. Margolis*